IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED

2:51 pm, 3/22/13

Tim J. Ellis
Clerk of Court

| | |
|---|---|
| In re ) | |
| ) | Case No. 12-21018 |
| CLYDE L. WINCHESTER, JR. ) | Chapter 13 |
| AMANDA L. WINCHESTER ) | |
| ) | |
| Debtors. ) | |

## OPINION ON WYOMING COMMUNITY BANK'S APPLICATION FOR RELIEF FROM STAY

On February 13, 2013, this matter came before the court on the Application for Relief from Stay filed by Wyoming Community Bank f/k/a Wyoming National Bank ("Bank") and the objection filed by Clyde Winchester, Jr. and Amanda Winchester ("Debtors"). At the conclusion of the hearing, the court took the matter under advisement. After reviewing the record, testimony, evidence and arguments of the parties, the court is prepared to rule.

**Jurisdiction**

This court has jurisdiction of this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under § 157(b)(2)(G). The motion was brought under 11 U.S.C. § 362(d).[1]

**Facts**

(1)    Debtors executed three promissory notes granting the Bank a security

---

[1] Unless otherwise indicated, all future statutory reference are to the Bankruptcy Code, Title 11 of the United States Code.

interest, as stated below:

Loan 1   Debtors executed a promissory note on September 18, 2007, for a loan in the amount of $32,170.00 granting Bank a security interest in a 2006 GMC pickup and a 1998 Ford pickup pursuant to a Commercial Security Agreement. Bank provided a copy of the UCC filing and the title for the 2006 GMC reflecting the lien.[2] The State of Wyoming Summary Judgment awarded Bank the principal sum amount of $8,864.67 with interest. On the date that Debtors' bankruptcy petition was filed, the balance owed was $10,056.04.

Loan 2   Debtors executed a promissory note on May 7, 2008, for a loan in the amount of $157,795.00, granting Bank a security interest in 4 Broken Arrow Rd., Lander, Wyoming. Bank provided a copies of the mortgage and note. The State of Wyoming Summary Judgment awarded Bank the principal sum amount of $140,173.15 with interest and penalties. On the date that Debtors' bankruptcy petition was filed, the balance owed was $152,456.13.

Loan 3   Debtors executed a second promissory note on May 7, 2008 for a loan in the amount of $225,483.00, granting Bank a security interest in 4 Broken Arrow Rd., Lander, Wyoming. Bank provided copies of the note and mortgage into evidence. The State of Wyoming Summary Judgment awarded Bank the principal sum amount of $218,868.11 with interest and penalties. The balance due on the date that Debtors' bankruptcy petition was filed was $242,485.37.

(2)   Debtors defaulted on their loan payments, and the Bank initiated proceedings in the Wyoming state court. The District Court for Fremont County, Wyoming Ninth Judicial District entered a Summary Judgment ("Wyoming Summary Judgment") on August 13, 2012 for the total amount of $409,414.48 plus attorney's fees and costs in the amount of $8,590.10 and interest at the rate of 10% per annum.

(3)   Bank began foreclosure proceeds on the real property, which is Debtors' residence. Also located at the residence is an oversized garage that provides Mr. Winchester a place to service and maintain the equipment rented by Himark. The foreclosure sale was scheduled for October 9, 2012.

---

[2] Bank did not provide a copy of the title for the 1996 Ford reflecting that the Bank had noted its lien on that title.

(4) Debtors filed their chapter 13 bankruptcy petition on October 8, 2012, halting the sale.

(5) Bank asserts that its liens are superior to the CitiMortgage, Inc.'s ("CitiMortgage") lien as CitiMortgage failed to answer or appear in the foreclosure action in state court. The Wyoming Summary Judgment recognizes that the lien held by CitiMortgage, by and through Mortgage Electronic Registration System's Inc (as nominee for CitiMortgage) is junior to Bank's liens. Debtors list CitiMortgage on their Schedule D with a claim in the amount of $170,000.00.

(6) Debtors own and operate an equipment rental business in Lander, Wyoming known as Himark, which is an "S" corporation. Himark filed its chapter 11 bankruptcy petition on November 29, 2012. Himark is also a party in the Wyoming District Court proceedings.

(7) Debtors testified that their income is derived from:
(1) Himark, where Debtors take draws from the business. Mr. Winchester operates Himark, but testified that he is also applying for additional employment. Mrs. Winchester also works part-time at Himark.
(2) Mrs. Winchester is a part-owner in a bookstore with her parents, but does not receive income from the bookstore, other than approximately $2,000.00 during 2012 as a draw. The bookstore profits were used to pay off its debt. Mrs. Winchester testified that the bookstore "breaks even" but hopes that business will increase as the competing bookstore in town has closed.

(8) Bank presented the testimony of Mike McDonald ("McDonald"), a self-employed general appraiser with 35 years experience. At Bank's request, McDonald inspected the residence on February 2, 2013. Mr. McDonald, using the sales comparison approach, valued the Debtors' residence at $370,000.00.

(9) Scott Estep, vice president of the Bank testified that Debtors started the Himark business in 2008 and obtained financing from the Bank. The purpose of the three loans were: (1) to purchase equipment; (2) to consolidation of Debtors' other debts, purchase equipment and provide case flow for the business; and, (3) for the vehicle loan. In 2009, the Debtors became delinquent in their payments. Estep testified that in January 2010, Bank modified the notes, "reset the clock" and did not require the defaults to be brought current, but added the default amounts to the end of the notes. In November, 2010, Bank restructured the notes again, but the Debtors continued to be in default. Bank, after reviewing the notes, declared the notes in default and began foreclosure proceedings.

(10)   Mrs. Winchester testified that according to the tax assessment, the fair market value of the residence is $440,000.00.

(11)   Mr. Winchester testified that he applied and is interviewing for employment in addition to operating Himark to provide additional income to fund the Debtors' plan. He also testified that he uses the 1200 square foot shop located at Debtors' residence to maintain and repair the equipment that Himark rents. The shop was constructed with taller than average walls and door to allow equipment to be driven directly into it for the maintenance and repair to be completed.

(12)   Mr. Winchester testified that if the Bank is able to foreclose on the property, the chances of finding a comparable place to rent, with a comparable work shop are "slim to none."

(13)   Mr. Estep testified that since the Wyoming court judgment was entered the Bank received one payment in the form of a levy in the amount of $1,904.28, of which the Debtors should receive credit toward the amount owed.

(14)   Debtors' individual tax return reflect the following income:
- In 2010 Debtors' total adjusted gross income was $49,867.00 and included a loss of $7,671 from Himark as an S corporation.
- In 2011 Debtors' total adjusted gross income was a negative $5,190.00 which was from the loss of Himark. Debtors do not reflect any individual wages.

(15)   Debtors rely upon the profits from Himark to pay their individual expenses. The income tax returns for Himark reflect that in 2010, it had $161,069.00 in gross receipts sustaining an overall loss of $2,633.00. In 2011, Himark generated $150,341.00 in sales, ending with an ordinary business income of $11,574.00.

(16)   Mrs. Winchester, who keeps the books for Himark testified that the income for Himark for 2012 will be comparable to 2011 and she expects gross sales to be $190,000.00 in 2013.

(17)   The value of the Himark equipment was stated to be $38,000.00 and was undisputed.

**Discussion**

The Bankruptcy Code provides,

> "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest..."
> (2) with respect to a stay of an act against property under subsection (1) of this section, if -
> (A) the debtor does not have any equity in such property; and
> (B) such property is not necessary to an effective reorganization;[3]

A party requesting relief has the burden of proof on the issue of the debtor's equity in the property. The party opposing such relief has the burden of proof on all other issues.[4]

Relief from the automatic stay under § 362(d)(1)

Under § 362(d)(1), relief must be granted upon a showing of cause. As cause is not clearly defined, the court must determine whether cause exists on a case-by-case basis.

Bank asserts that Debtors do not have the right to reinstate or cure the Bank's loans in this chapter 13 bankruptcy as the loans matured and Wyoming State Judgment granted the Bank the right to foreclose.

The issue is whether the defaults prior to the chapter 13 petition are curable through a chapter 13 plan under the broad provisions of § 1322, which provides that a

---

[3] § 362(d)(1) and (2).

[4] 11 U.S.C. § 362(g); *In re Anthem Communities/RBG, LLC*, 267 B.R. 867 (Bankr. D. Colo., 2001).

plan under Chapter 13 may

> "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.[5]

This court found several Tenth Circuit bankruptcy courts which have addressed this issue. The Bankruptcy Court for the District of Utah, in *In re Colvin,* discussed the debtors' power to cure such a default, stating:

> "Some courts have held that where mortgage by its terms permits the creditor to accelerate the debt before filing, section 1322(b)(5) does not apply. This view is predicated upon the principal that since acceleration caused the obligation to become immediately due, the maturity date of the last payment does not extend past the date for the last payment under the plan. Therefore the entire amount must be paid under the plan. To hold otherwise, would modify the mortgagee's rights."[6]

The Utah Bankruptcy Court further states,

> "...the majority of cases have held that the power to "cure" contained in Section 1322(b)(5) includes the power to decelerate the accelerated mortgage debt and reinstate the original mortgage payment schedule."[7]

and,

> " In almost every Chapter13 case filed by a homeowner debtor, the mortgage debt has been accelerated. By prohibiting a debtor from curing defaults on accelerated loans, the congressional intent and rehabilitative purposes behind Chapter 13 would be defeated. The curing of defaults under this section is not considered a modification of the mortgage lien holder's rights.[8]

---

[5] §1322(b)(5).

[6] In re Colvin, 57 B.R. 299 (Bankr. D. Utah 1986).

[7] *Colvin* at 303 citing *In re Taddeo*, 685 F.2d 24 (2nd Cir. 1982); *In re Acevedo*, 26 B.R. 994 (Bankr. E.D. N.Y. 1982); *In re Briggs*, 25 B.R. 317 (Bankr. D. N.D. 1982); *In re Davis*, 16 B.R. 473, Bankr. D. Kan. 1981.).

[8] *Colvin* at 303 citing *In re Taddeo* at 27.

The Bankruptcy Court for the Western District of Oklahoma discussed five views involving § 1322(b)(5):

(1)  De-acceleration and reinstatement are not available after the mortgagee has exercised its right to accelerate, whether or not a judgement has been obtained;[9]

(2)  De-acceleration and reinstatement are available after the note and mortgage have been accelerated, but not after a judgment of foreclosure has been entered;[10]

(3)  The debtor may cure a default even after a state court judgment of foreclosure has been entered, provided no sale has taken place;[11]

(4)  The debtor may cure a default even after a state court judgment, without specifically addressing the question of whether a sale has taken place;[12] and,

(5)  De-acceleration and reinstatement are available even after a sale pursuant to a foreclosure judgment, so long as the debtor still has the right of redemption at the time the bankruptcy petition is filed.[13]

The Oklahoma Bankruptcy Court held that a Chapter 13 plan proposing to cure defaults in a residential mortgage within a reasonable time and to continue making periodic payments in accordance with the original loan instruments, may be confirmed, notwithstanding the entry of a judgment of foreclosure prior to the filing of a Chapter 13

---

[9] *In re Anderson*, 73 B.R. 993 (W.D. Okla. 1987) citing *In re LaPaglia*, 8 Bankr. 937 (Bankr. E.D. N.Y. 1981).

[10] *Anderson* at 994 citing *In re Pearson*, 10 Bank. 189 (Bankr. E.D. N.Y. 1981).

[11] *Id* citing *In re Acevedo*, 26 Bankr. 994 (E.D.N.Y. 1982).

[12] *Id* citing *In re Taddeo*, 685 F.2d 24 (2nd Cir. 1982).

[13] *Id* citing *In re Chambers* 27 Bankr. 687 (Bankr. S.D. Fla. 1983).

petition.[14]

The Bankruptcy Court for the Western District of Oklahoma also addressed this issue in *In re Latimer*, holding that the debtor's plan's de-acceleration of the indebtedness was consistent with the provision of § 1322(b).[15] The court allowed the debtors to pay the delinquent and regular monthly payments without becoming liable for the entire amount of the indebtedness.

This court had this issue before it in *In re Monson* and held that if a residential mortgage is in default triggering contractual acceleration of the mortgage debt, a chapter 13 plan to de-accelerate by paying the amount of the original default rather than the entire accelerated debt, is a permissible cure, not a prohibited modification.[16]

In the Tenth Circuit, this court and the Colorado Bankruptcy Court did not allow for the de-acceleration of the indebtedness and reinstatement of the loan after the foreclosure sale occurred.[17] The facts of these cases distinguish them from the case currently before the court. The foreclosure sales had occurred, leaving the debtors with the rights of redemption under Colorado and Wyoming law.

This court finds that in the case before it, the foreclosure sale did not occur and adopts the view that de-acceleration and reinstatement are available after the note and mortgage have been accelerated in a Chapter 13 plan. The court does not adopt the

---

[14] *Id* at 996.

[15] *In re Latimer*, 110 B.R. 968 (Bankr. W.D. Okla. 1989).

[16] *In re Monson*, Case No. 09-20487, 2009 Bankr. LEXIS 3951 (Bankr. D. Wyo. Dec. 7, 2009).

[17] *In re Robertson*, 4 B.R. 213 (D.Colo. 1980) and *In re McCarn*, 218 B.R. 154 (10th Cir. BAP 1998).

Page 8

Bank's argument. Therefore, relief from the automatic stay is denied for "cause" under §362(d)(1).

Relief from the Automatic Stay under § 362(d)(2)

The stay of an act against property may be lifted when the debtor has no equity in the property and the property is not necessary for an effective reorganization. A debtor does not have equity in property when the debts secured by liens on the property exceed the value of the property. Lack of equity is not necessarily fatal if a debtor can prove that the property at issue is necessary to an effective reorganization

(1)  Do Debtors have equity in the real property?

The Bank's expert witness, Mr. McDonald completed a current appraisal on the property and valued the Debtors' residence at $370,000.00. Mrs. Winchester testified that the county tax assessment documents provide that the Debtors' residence is valued at $440,000.00. An owner, because of his ownership, is presumed to have special knowledge of the property and may testify as to its value and may offer such testimony without further qualification and entitled to the privileges of a testifying expert.[18] The court finds that the testimony of Mrs. Winchester, while credible, does not provide the court an accurate value of the property. She testified that the county tax assessment on the residence provided the value of the property. However, the court finds that the purpose of a value on a tax assessment is different than a current, appraised value, completed just a few weeks before the hearing by a qualified expert appraiser. Therefore, the court determines that the value of the real property is $370,000.00. The

---

[18] *United States v. 10,031.98 Acres of Land, More or Less*, 850 F.2d 634 (10th Cir. 1988).

Page 9

parties did not dispute the value of the equipment stated at $38,000.00. The total value of the property, real and personal, is calculated to be the amount of $408,000.00.

The court's calculations of Bank's debt reflects that the outstanding claim, at the time the Debtors' bankruptcy petition was filed was $418,004.58. Additionally, CitiMortgage, Inc. has a lien in the amount of $170,000.00.[19] The total amount of debt secured by the property is $588,004.58. The debts secured by liens on the property exceed the value of the property, therefore Debtors do not have any equity in the property.

(2)     Is the property necessary for an effective reorganization?

If a lack of equity is shown, then the debtor has the burden of not merely showing that if there is conceivably to be an effective reorganization, the property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. That means that there must be a reasonable possibility of a successful reorganization within a reasonable time. To meet its burden, a debtor must present admissible, credible evidence of a realistic prospect of reorganization, not just the hope of reorganization. The mere fact that the property is indispensable to the debtor's survival is not sufficient to deny a creditor's relief from stay motion.[20]

Debtors testified that the shop located at the residence is necessary for Mr. Winchester to repair and maintain the equipment that Himark rents. He testified that the

---

[19] Debtors listed CitiMortgage, Inc. as a secured creditor on their Schedules with a claim in the amount of $170,000.00.

[20] *In re Koch*, Case No. 09-32097, 2010 Bankr. LEXIS 1485 (Bankr D.Colo., Apr. 9, 2010).

chances of finding a comparable home with a specially designed shop were "slim to none."

Debtors also testified that: (1) Mr. Winchester was seeking additional employment to fund Debtor's plan and provide for payments to creditors; and, (2) Himark's revenues in 2012 would be comparable to 2011. Debtors' 2012 tax return reflected that Himark generated $150,341.00 in sales and ended the year with income of $11,574.00. Mrs. Winchester testified that she expects Himark's gross sales to increase to $190,000.00 in 2013, although she did not explain what would precipitate such an increase in gross sales between 2012 and 2013. The court notes that during 2011, Debtors failed to service their mortgage debt with the Bank and CitiMortgage.

The court does not doubt Debtors' sincerity in wanting to reorganize and maintain their home and businesses. However, the court finds that these desires are based upon speculation, hopes and dreams. Debtors did not provide evidence that they can generate enough income to pay their debts. Debtors failed to demonstrate that a successful reorganization within a reasonable time is probable.

In conclusion, the court finds that (1) Bank carried its burden proving that the Debtors do not have any equity in the property; and, (2) Debtors failed to meet their burden that the property is necessary for an effective reorganization and demonstrate that a successful reorganization within a reasonable time is probable.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 22 day of March, 2013.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Jay Vincent
    Paul Hunter