IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED

4:24 pm, 6/20/13

Tim J. Ellis
Clerk of Court

| | |
|---|---|
| In re ) | |
| ) | |
| CLYDE L. WINCHESTER, JR. ) | Case No. 12-21018 |
| AMANDA L. WINCHESTER ) | Chapter 13 |
| ) | |
| Debtors. ) | |

## OPINION DENYING CONFIRMATION OF AMENDED CHAPTER 13 PLAN DATED JANUARY 15, 2013

On May 21, 2013, this matter came before the court for an evidentiary hearing for confirmation of the Amended Chapter 13 Plan dated January 15, 2013 (Amended Plan), filed by Clyde Winchester, Jr. and Amanda Winchester ("Debtors") and the objections filed by Mark Stewart, Standing Chapter 13 Trustee ("Trustee") and Wyoming Community Bank, Riverton ("WCB"). At the conclusion of the hearing, the court took the matter under advisement. The court, having reviewed the recorded, testimony and evidence and applicable law, denies confirmation.

The court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(L).

The Trustee objects to confirmation of the Amended Plan asserting: (1) the plan is not feasible in violation of 11 U.S.C. § 1322(a)(1); (2) Debtors are not contributing all of their disposable income into the plan; (3) Debtors propose to cure defaults on their loans with WCB, but are not entitled to "cure" the defaults and must pay the amounts owed in full during the term of their Amended Plan or are in violation of § 1322(b)(5); and, (4)

the plan unfairly discriminates. WCB asserts that: (1) the Amended Plan is not confirmable as the Debtors propose an improper treatment of its secured claim; and, (2) the plan is not feasible.[1]

Debtors' Amended Plan proposes to pay two payments in the amount of $1,070.00 and 55 monthly payments in the amount of $1,550.00 for a total amount to be paid into the Amended Plan of $87,390.00. The Amended Plan proposes the following distribution:

```
Administrative Expenses:
    Attorney fees ................................ $3,281.00
Priority Claims:
    IRS ....................... ($424.00 per month) $23,747.38
Defaults Cured
    Wyoming Natl Bank - n/k/a
        Wyoming Community Bank .... $44,260.00 over 57 months
        *   does not include loan 6123 which Debtors propose
            that Himark will pay. The loan was personally
            guaranteed by the Debtors.
    Citifinancial ...................... $4,118.00 over 57 months
Unmodified Claims/pursuant to contract terms:
    Wyoming Community Bank (loan 6124) ..... $1,650.00 per month
    Wyoming Community Bank (loan 5707) ......  $646.00 per month
    Citifinancial ........................... $1,350.00 per month
    Joe Pinter ............................. $1,700.00 per month
    Central Bank and Trust .......................... $1,553.14
        *   CB&T was granted relief from stay on a horse trailer at
            a hearing on June 18, 2013. The issue regarding the 5th
            wheel camper is still pending. The amount of the
            monthly payment is allegedly $115.26.
```

---

[1] The Trustee also raised the objection that the Wyoming Department of Revenue ("WDR") filed a priority claim in the case. However, the Debtors and Trustee each stated at the hearing that the WDR claims are the responsibility of Himark (Case No. 12-21173), a sister case to the Debtors' individual chapter 13 case.

Page 2

The court's review of the financial information shows that the proposed Amended Plan does not reconcile with Debtors' reality. The Amended Plan does not provide for the correct WCB arrearage in the amount of $75,098.68. Debtors list their monthly house mortgage payment on Schedule J in the amount of $1,350.00. However, the testimony reflects that the adjusted pre-petition monthly payment was $1,650.00. Debtors do not list Citifinancial or CB&T debts on their Schedule J.

Debtors' income is based upon draws from their two businesses, Himark and the AK Enterprises which operates a bookstore in Lander, Wyoming. Additionally, Mr. Winchester obtained employment that shall provide an additional $3,200.00 to $4,000.00 per month gross income to fund the Debtors' Amended Plan. Debtor estimates his federal income tax withholding will be in the amount of $400.00 per month. However, as Mr. Winchester only worked for a brief time prior to the hearing, his wage statements do not reflect the amount of his actual federal income tax withholding. Additionally, Debtors have not yet filed their 2012 federal tax return that would provide current historical income evidence regarding their income from their two businesses.

A review of the financial records for Himark and AK Enterprises reflect that the businesses are not generating sufficient income to service their own debt, much less provide Debtors the income necessary to sustain Chapter 13 plan payments. Debtors testified that they have $8,000.00 to pay to WCB toward the post-petition arrears. During the testimony, it was discovered that the source of that $8,000.00 was a portion of a

payment from a customer who wrecked one of Himark's trailers. The trailer was part of WCB's collateral. Debtors used the proceeds from the wrecked trailer to partially fund Himark's operations and asserted they had sufficient income to pay $8,000.00 to WCB toward the arrearage amount. Mrs. Winchester conceded that deducting this one-time payment from the monthly income left Himark operating in the negative for April, 2013.

The court is concerned that the Debtors continue to use assets from the Himark bankruptcy case to fund their lifestyle and pay their personal debts. The court's review of Himark's operating reports that included copies of its bank statements, reflect that there are unexplained payments from Himark's bank account to Safeway; Lander Valley Animal Hospital; Bass Pro Shop in Denver; and numerous "NSF" charges. Debtors seem to be "robbing Peter to pay Paul," or in this case, robbing Himark to pay their personal expenses, providing financial information that skews Himark's monthly income, and subsequently the Debtors' income. Then Debtors propose to pay WCB a portion of the default amount from funds that were proceeds from WCB's collateral, but not pay Himark's creditors.

Additionally, the book store is not generating enough income to service its debt. Debtors' propose to pay Mr. Pinter the amount of $1,700.00 a month on a mortgage in the amount of nearly $225,000.00 that: (1) has matured by its own terms and was not paid at that time: and, (2) the collateral appears to have a value of approximately $88,000.00. Mrs. Winchester testified that Debtors had drawn income from the book store in nominal

amounts of $400.00 - $750.00 for the family's living expenses. She also conceded that the Debtors are not paying Citifinancial. Even with the additional income generated by Mr. Winchester, Debtors' income is not enough to pay the amounts proposed in the Amended Plan.

Debtors argue that as their plan payments are current, they should be afforded an opportunity to succeed. The court does not disagree that the debtors should be afforded the opportunity to reorganize. However, based upon testimony and evidence presented, the court cannot find that the proposed Amended Plan is feasible. The numbers do not add up to a plan that is confirmable. On this issue alone, confirmation of the Amended Plan fails.

The court, finding that the Amended Plan is not confirmable based upon feasibility, declines to rule on the balance of the Trustee's and WCB's objections.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 20 day of June, 2013.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
   Paul Hunter
   Jay Vincent